## BAKER *v.* BAILEY.

### Opinion delivered March 18, 1912.

1. INNKEEPER—WHEN RELATION OF GUEST ESTABLISHED.—Where a traveller at a railroad station handed his baggage to a hotel porter, intending to become a guest of the hotel, but subsequently changed his mind, and did not procure or offer to procure any accommodation there, he did not become a guest of the hotel, so as to render it liable as such for loss of his baggage. (Page 14.)

2. SAME—LIABILITY TO ONE NOT A GUEST.—Where a traveller, without requesting any accommodation from the hotel, left his baggage in charge of the hotel porter, who deposited it in the hotel, whence it was stolen, the hotel was a gratuitous bailee, and only bound to the use of slight care in protecting the property, and responsible for its loss only in case of gross neglect. (Page 15.)

3. BAILMENT—GRATUITOUS BAILEE—QUESTION FOR JURY.—Whether a gratuitious bailee had exercised due care or had been guilty of gross negligence, in connection with property lost while in its care, was a question of fact for the jury, in an action to recover for the property· (Page 15.)

Appeal from Sebastian Circuit Court, Fort Smith District; *Daniel Hon,* Judge; reversed.

### STATEMENT BY THE COURT.

Appellant, a traveling salesman, brought suit against appellee for the loss of one of his grips containing wearing apparels and other personal effects. He was passing through Fort Smith on his journey, and on arriving there handed his baggage—two grips—to the porter of the Hotel Main, who was at the station to receive the baggage of incoming guests.

The complaint alleged: "That plaintiff went direct to the hotel from said station with the intention of remaining until some time the following day; but upon arriving at said hotel found that the train he would take would depart much earlier than he had anticipated, and, owing to the time of the departure, he did not procure a room but remained in and about the hotel."

The answer denied that appellant became a guest at the hotel and any liability for the loss of his grip.

He testified: "I was under the impression that the Kansas City Southern train left going north something like 4 or 5 o'clock next morning, and gave the porter the baggage with the expectation of staying all night there if the train did go at this time. When I reached the hotel, I found that the train went out earlier than I expected, upon inquiry of the clerk, and, consequently, I did not have any time to speak of to get any sleep if I had gone to bed, and did not register. If I had known the train was to leave as early as it did, I would have checked my baggage at the station and not gone to the hotel."

He stated further that he arrived at the hotel about 10 o'clock, too late for supper, and went out to a nearby restaurant for that meal, which consumed some time. That he later returned to the hotel and wrote some letters and stayed in and around there until the time of the departure of his expected train, when he asked the clerk for his grips and only one was returned to him, the one containing the wearing apparel and other effects not being found.

There was some testimony relative to the rules of the hotel, as to its liability for baggage only when checked and put in the baggage room, and that there was a notice to this effect upon the check room door. From other testimony, it was doubtful whether this notice was in such a place as would likely attract the attention of or be seen by persons required to observe its provisions.

The hotel porter testified that he took all the grips that were handed to him at the station; that he supposed he got the two belonging to appellant, although he did not know him, and that it was so dark at the station that he could not easily recognize any of the persons turning their grips over to him. He said also that he brought all the baggage delivered to him to the hotel; that none was lost, and that he put it down on the floor of the lobby at the accustomed place. When appellant got ready to leave, he inquired for and demanded his grips, but only one was delivered to him, the clerk not being able to find the other, which he thought might have been taken by mistake by some member of the base ball club that had gone from the hotel out to Poteau, Oklahoma, to play there the next day. The clerk

also stated that it was the rule of the hotel to require baggage checked before any responsibility for loss was assumed by it, of which rule notices were posted in the hotel.

There was testimony also as to the value of the lost grip and its contents.

The court directed a verdict for appellee. From the judgment thereon this appeal comes.

*H. C. Locklar* and *Fred A. Isgrig,* for appellant.

Appellant was a guest of the hotel, but if not he was liable as a bailee. 83 Ga. 696; 75 Ill. App. 102; 69 *Id.* 618; 4 Cush. 114; 37 Ga. 242; 88 Mo. 72; 136 S. W. 997; 59 Ky. 439; 53 Me. 163.

*Read & McDonough,* for appellee.

1. Appellant was not a guest, nor was there any liability even as a bailee. 136 S. W. 997; 88 Mo. 72; 77 Mo. App. 596; 10 Daly (N. Y.) 265; 79 S. W. 113; 16 Am. & E. Enc. Law, p. 518; 65 S. E. 674.

2. The liability of a gratuitous bailee is limited to gross negligence. 22 Fla. 627; 1 Am. St. Rep. 219; 52 Ark. 364.

KIRBY, J., (after stating the facts). It is insisted that appellant became a guest of the hotel, and that it was liable to him as such for the loss of his property; but we do not agree to this contention.

In *Gastenhofer* v. *Clair,* 10 Daly (N. Y.) 265, the court said: "The universal rule seems to be that one can not become the guest of a hotel unless he procures some accommodations. He must procure a meal, room, drink, feed his horse, or at least offer to buy something of the innkeeper before he becomes a guest."

In *Hill* v. *Memphis Hotel Company,* 136 S. W. (Tenn.) 997, the court said: "To establish the relation of host and guest, the traveller must visit the inn for the purpose of availing himself of the entertainment offered, and the innkeeper must receive the traveller for the purpose of entertaining him, and it is not necessary that he should register."

And further:

"An application to the innkeeper for entertainment is sufficient notice of the traveller's intention to become a guest, and supplying his wants and furnishing the entertainment in

the way in which the innkeeper publicly professes to entertain travellers are sufficient acceptance to constitute the relation of host and guest.  *  *   *   It is sufficient if he visited the inn for the purpose of receiving entertainment and is entertained by the keeper."

Appellant did not take supper nor a room, neither did he buy anything at the hotel after his arrival, and, at most, wrote a few letters upon its stationery without expense to himself. According to his own statement, he spent nothing but the evening with the hotel, neither did he offer to spend anything else, and we hold that he did not become a guest thereof under the circumstances, and the hotel company incurred no liability on that account.

Its porter, however, was duly authorized for that purpose, and received the baggage of appellant at the train, who at the time of its delivery to him intended to become a guest of the hotel, and the undisputed testimony shows that the grip containing the wearing apparel was not returned to him.   Certainly, if he had procured some entertainment or refreshment at the hotel the relation of the guest and host would have been established, and the hotel company's liability fixed in accordance with such relation.   Not having done so, and the porter of the hotel having received his grips and placed them in the hotel, along with the baggage of all others stopping there, the hotel thereby became a bailee of such baggage.   The bailment, being solely for the bailor's benefit, was a gratuitous one, and the hotel was only bound to the use of slight care in the protection of the property, and responsible for its loss only in case of gross neglect.   16 Am. & Eng. Enc. of Law, pp. 518, 531; *Wear* v. *Gleason*, 52 Ark. 364; Van Zile on Bailment, § 19; Story on Bailment, § 23.

As to whether the bailee, the hotel, exercised the care the law required in the protection of appellant's property, or was guilty of such gross negligence as would make it responsible for the loss thereof, was a question of fact to be determined by the jury, under proper instructions from the court.   *Preston* v. *Prather*, 137 U. S. 604; L. Ed. 788.

It follows that the court erred in directing a verdict, and the judgment is reversed and the cause remanded for a new trial.