## ADELPHIA HOTEL CO. v. PROVIDENCE STOCK CO.

(Circuit Court of Appeals, Third Circuit. January 12, 1922.)

### No. 2748.

1. **Innkeepers ⚖➡11(4)—Holding out one to public as servant estopped to deny such relation.**

    Where an innkeeper, offering the public entertainment and care, puts a person in the position of a servant, with the duties of a servant, with respect to the facilities of such entertainment, and reserves and exercises control over his work, and says nothing and does nothing whereby a private arrangement to the contrary is disclosed to the public, the principal is estopped from disclaiming the relation of master to the person so positioned, and from avoiding liability for his negligence.

2. **Innkeepers ⚖➡11(2)—May become bailees of goods from one not guest.**

    An innkeeper may, as a bailee, with or without reward, receive goods from one who is not strictly his guest.

3. **Innkeepers ⚖➡11(8)—Defendant held liable, either as innkeeper or bailee for hire, for loss of trunk through negligence.**

    Where defendant, keeper of a hotel, accepted plaintiff's trunk for storage, and received pay therefor, and afterward undertook for hire to transfer the trunk to a railroad station, and delivered it to the driver of a wagon, who stole it, defendant was liable for the loss as innkeeper, if the driver was its servant, and, if not, as bailee for hire, if it was chargeable with want of ordinary care in delivering the trunk to him.

4. **Evidence ⚖➡113(13)—Value placed on property for insurance purposes held irrelevant on issue of market value.**

    On an issue as to the fair market value of merchandise, the value placed on it by the owner for insurance purposes, or in settlement with the insurance company for its loss, *held* irrelevant.

In Error to the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

Action at law by the Providence Stock Company against the Adelphia Hotel Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Ralph B. Evans, of Philadelphia, Pa., for plaintiff in error.

Charles J. Biddle, of Philadelphia, Pa., for defendant in error.

Before WOOLLEY and DAVIS, Circuit Judges, and LYNCH, District Judge.

WOOLLEY, Circuit Judge. The action is in trespass for the loss of the contents of a trunk. It was brought on the liability of the defendant hotel company for the safe keeping of a trunk committed to its care under circumstances presently to be stated. The verdict was for the plaintiff. After judgment the defendant sued out this writ of error.

Samuels was a traveling salesman in the employ of the plaintiff, a jewelry concern of Providence, Rhode Island. When in Philadelphia he had regularly been a guest at the Hotel Adelphia, operated by the defendant company.

⚖➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

On the trip in question Samuels went from the station to the hotel in a taxicab and took with him his trunk of jewelry samples. Arriving at the hotel, he deposited the trunk in a vault provided by the hotel for the storage of valuables, and paid a hotel employé in charge of the vault one dollar for its storage. In return he received a brass vault check with a number and the name "Hotel Adelphia" on it. The defendant company admits that on receiving the trunk it knew that it contained jewelry.

Being unable to obtain lodging at the hotel, Samuels spent the night elsewhere. The next morning he went to the hotel and took some jewelry out of the trunk for the purpose of calling on his customers. Later, he returned, replaced the jewelry and arranged with the head porter to have the trunk taken to the station. Samuels surrendered the vault check to the porter, and on paying him fifty cents for transportation received a transfer check upon which also appeared a number and the name "Hotel Adelphia." He then had lunch at the hotel.

The head porter had his desk in the main lobby of the hotel and was in full charge of the transfer of baggage in and out. Under an arrangement with the hotel company he hired and paid the under porters and wagon drivers and owned the horses and wagons. Ordinarily, guests paid him for the transportation of their baggage but sometimes charges for the service were entered on guests' bills. In both cases the money, directly or indirectly, was paid the head porter and was retained by him as his own. The under porters wore caps bearing the words "Hotel Adelphia" and on the sides of the wagons the same words were painted. The upkeep and appearance of the transportation equipment was inspected by the manager of the hotel.

After lunch, Samuels learned that his trunk had not yet gone to the station. Whereupon the head porter sent another porter to the vault to get it off. The trunk was taken out by the vaultkeeper and put on a wagon by an elevator man and Cohen, the driver of the wagon. Cohen drove off with the trunk and stole it.

The head porter denied that he had employed Cohen. The relation of Cohen to the head porter and to the hotel appears from testimony that on the morning of the day in question Cohen applied to the head porter for a position as driver. The head porter asked him about his qualifications and told him to go around with one of the drivers, learn the locations of the stations, and on his return he would let him know whether he had a position for him. No inquiry was made as to his name or address. Later, Cohen had lunch at the hotel with the employees. He brought the wagon to the hotel and was the only one on it when he drove away with the trunk.

The defendant rested its defense on two propositions: First, that between Samuels and the defendant there was not the relation of guest and innkeeper; and, second, that the head porter, when he accepted the trunk for transfer and received the whole consideration for the service, was acting, not as the servant of the defendant innkeeper, but as an independent contractor.

[1] Taking the second ground first the court, rightly we think, refused for lack of evidence to submit to the jury an issue whether the

head porter was an independent contractor. Where an innkeeper, offering the public entertainment and care, puts a person in the position of a servant with the duties of a servant with respect to the facilities of such entertainment, and reserves and exercises control over his work, and says nothing and does nothing whereby a private arrangement to the contrary is disclosed to the public, and so constructively to the plaintiff, the principal is estopped from disclaiming the relation of master to the person so positioned and from avoiding liability for his negligence. Dickinson v. Winchester, 4 Cush. (Mass.) 114, 50 Am. Dec. 760.

[2] Putting aside the question whether the head porter was an independent contractor, the trial court submitted the case to the jury, not on the defendant's liability arising alone from the relation of innkeeper and guest, where care of baggage is an incident to the entertainment of the guest, but mainly on the ground that Samuels' payment of money for the care and transportation of his trunk and the innkeeper's acceptance of the money for the service promised and undertaken, raised between the parties at least the relation of bailor and bailee for hire. Admittedly, an innkeeper may, as a bailee, with or without reward, receive goods from one who is not strictly his guest. 14 Ruling Case Law, 527.

[3] Submitting the issues, first, whether Cohen—the man to whom the innkeeper delivered the plaintiff's trunk and who later stole it—was a servant of the defendant, Huntzicker v. Illinois Central R. Co., 129 Fed. 548, 64 C. C. A. 78; 14 Ruling Case Law, 526; and second (if found not to be), whether the defendant was negligent in turning over the trunk to him, Houser v. Tully, 62 Pa. 92, 1 Am. Rep. 390, the court instructed the jury that, on an affirmative finding upon either issue, the defendant should respond in damages; and that the damages should be measured not by any one of the several rules imposing on an innkeeper the duty of care in high degree with respect to his guest's property, 14 Ruling Case Law, 514, 515, but by such care as an ordinarily prudent person would exercise under the circumstances.

Whether innkeeper or bailee for hire, the instruction, we think, confined the defendant's responsibility to the legal minimum,—that of care in the degree which the law imposes on a bailee for hire. Yet the defendant maintains that its responsibility is still one point lower in that its position was that of a gratuitous bailee and its liability as such was for gross negligence only, citing Baker v. Bailey, 103 Ark. 12, 145 S. W. 532, 39 L. R. A. (N. S.) 1085, Tulane Hotel Co. v. Holohan, 112 Tenn. 214, 79 S. W. 113, 105 Am. St. Rep. 930, 2 Ann. Cas. 345, and Fisher v. Kelsey, 121 U. S. 383, 7 Sup. Ct. 929, 30 L. Ed. 930.

We discover no analogy between the case at bar and Fisher v. Kelsey where goods of a guest were stolen while on exhibition to customers in a display room of a hotel. Recovery was sought in opposition to a state statute limiting liability of an innkeeper to circumstances different from those proven in the case.

Nor do we think Baker v. Bailey and Tulane Hotel Co. v. Holohan rule the case at bar and for two reasons: First, because in these cases

there were findings—on evidence which admitted little else—that the persons whose goods were lost were not guests of the innkeepers; also that the goods were left with the innkeepers without compensation paid or intended to be paid. In the instant case there is evidence from which, under authority of the same cases, the jury might have found that Samuels was a guest of the defendant, 14 Ruling Case Law, 498; or, if the jury found the contrary because Samuels' entertainment was limited to one meal, the evidence is conclusive—the doctrine of independent contractor being out of the way—that he paid the defendant for storing and transferring his trunk and the defendant accepted payment and undertook the service. Whichever relation existed between the two parties, whether that carrying the high degree of care of an innkeeper or the lower degree of care of a bailee for hire, the defendant cannot complain of the court charging the rule of damages applicable to the relation of lesser responsibility.

Of the remaining assignments of error we find only one which calls for discussion. That has to do with a ruling of the court on an offer of evidence. The circumstances were these:

[4] It appeared from the testimony that the trunk contained wares of two classes,—samples and articles for sale called "closeouts." The value of the latter was uncertain because, some having been sold, their number was uncertain. For this reason the court limited recovery to damages for the loss of the samples. There was evidence that the samples were wholly intact. The president of the plaintiff company had testified to the value of the samples. On cross-examination questions were asked and answered as follows:

"Attorney for Defendant: Q. You had these goods insured, didn't you?
"A. Yes, sir.
"Q. You put a value on them, didn't you?
"A. Surely.
"Q. You made a settlement with the insurance company didn't you?
"Attorney for Plaintiff: I object to that. What has that to do with this case?
"Attorney for Defendant: I want to show the value he put on them when he made a settlement with the insurance company.
"(Objection sustained. Exception noted.)"

The subject to which the examination and cross-examination of the witness was being addressed was the value of the goods stolen, to be measured, as later charged by the court, "by the fair market price in a fair market." If objection had been made to the first or second question—"You had these goods insured, didn't you? You put a value on them, didn't you?"—it would, doubtless, have been sustained for the reason that the amount for which they were insured and also the amount at which they were valued for the purpose of insurance is not evidence of market value.

"The theory and practice of insurers and insured is to make the limit of insurance much less than the value of the property, while owners are permitted to procure insurance in amounts far below this limit. The result is that the amount of insurance has no fixed or uniform relation to the value of the property it covers, and hence does not directly tend to disclose its value." Union Pacific R. Co. v. Lucas, 136 Fed. 374, 69 C. C. A. 218.

If the amount of insurance has no fixed or uniform relation to the value of the property it covers and, therefore, is to be excluded in ascertaining the market value of such property, then certainly the value placed on property by the insured "when he made a settlement with the insurance company" should a fortiori be excluded.

The judgment below is affirmed.