McDonald Land Co. *v.* Shapleigh Hardware Co.

Opinion delivered April 14, 1924.

1. Judgment—vacation—meritorious defense.—Judgments will not be vacated as having been rendered without service upon the judgment debtor, without alleging and proving a meritorious defense to the actions in which the judgments were rendered.

2. Fraudulent conveyances—evidence.—Evidence *held* insufficient to prove that a conveyance of land by a debtor was made with intent to cheat, hinder and defraud his creditors.

3. Deeds—delivery and acceptance.—Where, before the execution of a deed, the grantees, in anticipation of its execution, paid the consideration therefor by discharging a part of the grantor's

debts, it will be presumed that the grantees accepted the deed from the time it was executed and deposited in the mail addressed to the grantees.

4.   BAILMENT—LIABILITY OF GRATUITOUS BAILEE.—Where goods purchased by one person were billed to a garage owned by another, who did not accept or agree to pay for the goods, but was a gratuitous bailee thereof, he was not liable therefor in the absence of any gross negligence causing loss to the seller.

Appeal from Greene Chancery Court; *Archer Wheatley,* Chancellor; reversed in part.

*M. P. Huddleston,* for appellants.

1.   The evidence is clear, practically undisputed, that Paragould, Arkansas, was not the "usual place of abode" of Bob J. McDonald at the time the several summonses were served upon his wife in the suits which went to judgment in the J. P. court, the transcripts of which judgments were filed with the circuit clerk, and made the basis for the creditor's bill.   Not only had he left, July 1, 1921, with the avowed public declaration never to return, but also, in the fall of the same year, his wife left, July 1, 1921, with the avowed public declaration never land, Ohio, to which place he came from Canada, and from there they went to Cuba, whence she returned later in 1921 to Paragould with the avowed purpose of selling and disposing of their household effects and other property.   It was while she was so engaged, and was living at the home of a brother of Bob McDonald's, that the summons were served upon her, when she happened to be at the old home place looking after the furniture.   The constable's return on the summons is the only contradiction of these facts, and, in the face of this evidence, the return should not be permitted to stand.   124 Am. St. Rep. 759; 21 R. C. L. 1322; 12 Col. 46; Pac. 771; 13 Am. St. Rep. 204; 19 Kan. 458; 27 Am. Rep. 149; 8 Kan. 228; 12 Am. Rep. 466; Ann. Cas. 1914A, p. 413; 32 Cyc. 518; 13 Me. 245; 14 Ohio St. 240; 84 Am. Dec. 373; 26 Vt. 748; 15 W. Va. 277; 100 Fed. 213.

2.   The deed from Bob J. McDonald and wife conveying the swimming-pool to Bill McDonald, Jr., signed,

acknowledged and mailed by him to Bill McDonald, Jr., at Havana, Cuba, on February 11, 1922, was delivered to the latter on that day; and the filing of the transcript of the judgment of the justice of the peace against Bob McDonald in favor of Shapleigh Hardware Company, in the office of the circuit clerk, on February 18, 1922, conferred no lien on the swimming-pool in favor of that company.

3. The court's holding that Bill McDonald was personally liable on the Shapleigh Hardware Company account was contrary to the preponderance of the evidence. He is not liable, even as a gratuitous bailee. 101 Ark. 81; 103 Ark. 12; 52 Ark. 364; Story on Bailment, § 23; 142 Ark. 100.

4. The creditor's bill was properly dismissed in so far as it sought to cancel the deed to the homestead. Creditors cannot complain at the conveyance of a homestead. Moreover, the sale of property in consideration of a *bona fide* preexisting debt equal to or exceeding its value is not fraudulent as to creditors. 63 Ark. 232. See also 119 Ark. 12.

*R. P. Taylor,* for appellees.

1. Discussion of the validity of the service of the summons is out of place now. If it be conceded that the service was invalid, nevertheless appellants have failed to allege and prove the fact necessary to invoke the jurisdiction of equity to set aside the judgments as clouds, viz: a meritorious defense to the several causes of action which eventuated in judgments. 50 Ark. 458; 74 Ark. 292, 297; 84 Ark. 527, 532; 127 Ark. 306, 310; 94 Ark. 347, 350. See also 136 Ark. 537; *Id.* 396. There is no reason why this rule should be relaxed in favor of a non-resident or expatriate. Appellants are barred from attacking the judgments for the further reasons that Bob McDonald received notice of the suits from his wife while they were still pending, and failed to make defense. This would be true even in a direct attack on a judgment rendered without service. 157 Ark. 464.

2.   As to whether or not the mailing of the deeds on February 11, 1922, constituted delivery on that day to the grantees, depends on whether the grantees selected the postal system as the agency for such delivery—and there is no proof that they selected that agency.   It is a mistake, however, even treating the mailing of the deeds on February 11 as constituting delivery, followed by actual receipt thereof on February 20, to conclude that such' delivery vested title free from the lien of the judgment filed on February 18.   Acceptance is quite as necessary as delivery to investiture of title under a deed.   80 Ark. 8; 77 Ark. 89; 63 Ark. 374, 376.   It is true that acceptance of a deed beneficial to the grantor will be presumed, and it may be conceded that our decisions, 121 Ark. 328 and 97 Ark. 283, imply that such acceptance is presumed to be contemporaneous with the delivery, but this presumption of contemporaneous acceptance gives way to liens intervening before actual delivery.   11 Bush (Ky.) 34, 21 Am. Rep. 205, 207; 54 L. R. A. 904, note.   The proposition that a debtor may prefer any creditor who relinquishes a sufficient amount of his claim to constitute an adequate consideration, may be overcome by the accompanying circumstances, such as the participation by the preferred creditor in the debtor's unlawful purpose to defeat other creditors.   28 Ark. 82; 12 R. C. L. 577 *et seq.*

3.   The evidence of Bill McDonald's personal liability for the Shapleigh Hardware Company's account is clear and conclusive.   If the merchandise order was unauthorized there was no repudiation of it, but, on the contrary, an acceptance of the fruits of the agency.   The attendant burden follows.   28 Ark. 59, 64; 101 Ark. 68, 75; Williston on Contracts, § 191; 6 R. C. L. 587.   See also 25 Ark. 100; 53 Ark. 155, 160; 41 Ark. 502, 507.

Wood, J.   Judgments were obtained against Bob J. McDonald in justice court in Greene County, Arkansas, by various creditors, from January 16, 1922, to and including February 8, 1922.   Summons was issued in each of these cases and service had upon McDonald, as

shown by the return of the constable, as follows: ''By delivering a copy and stating the substance thereof at the usual place of abode of the within named Bob J. McDonald, to Mrs. Bob J. McDonald, his wife, and a member of his family over the age of fifteen years, as I am herein commanded.'' Execution was issued on the several judgments, and a return of *nulla bona* thereon, and certified transcripts of the judgments were filed with the clerk of the circuit court of Greene County from and on January 27, 1922, to and including February 18, 1822.

Bob J. McDonald and wife executed a deed to Bill McDonald, Jr., conveying certain lots in Paragould, Arkansas, known as the ''swimming-pool,'' and also conveyed to the McDonald Land Company certain other lots described in the deed and known as ''the Bob J. McDonald homestead.'' The deeds were dated January 28, 1922, and were signed and acknowledged by Mrs. Bob J. McDonald on that day. The deeds were then carried with her to Bob J. McDonald, who was then in Cuba, and were by him signed and acknowledged on the 11th of February, 1922, and on that day mailed by him at Havana, Cuba, to the respective grantees at Paragould, Arkansas. The deeds were duly filed by the grantees for record in the clerk's office at Paragould, Arkansas, at 11 o'clock a. m., February 20, 1922. On March 14, 1922, the Shapleigh Hardware Company, one of the creditors that had obtained judgment in the justice court, a transcript of which had been lodged in the office of the circuit clerk February 18, 1922, filed what it called a creditor's bill in the chancery court of Greene County against the McDonald Land Company and Bill McDonald, Jr., alleging that the deeds above-mentioned were executed for the purpose of defrauding the creditors of Bob J. McDonald; that Bob J. McDonald at the time was a resident of Cuba, and that by these conveyances he had rendered himself insolvent. The other creditors who had obtained judgments in the justice court and filed transcripts thereof with the circuit clerk, as above mentioned, also were made parties plaintiff to the creditor's

bill, and joined in the prayer to have the deeds mentioned canceled.

The Shapleigh Hardware Company alleged in its bill that Bill McDonald, Jr., was indebted to it on the same account as that on which it had recovered judgment against Bob J. McDonald in the justice court, and it prayed personal judgment against Bill McDonald, Jr. The judgment creditors filed, and made an exhibit to their complaint the several judgments obtained in the justice court, as indicated.

The McDonald Land Company and Bill McDonald, Jr., answered the creditor's bill, denying the material allegations thereof, and set up that no personal service was had upon Bob J. McDonald upon which to base the alleged personal judgments against him, inasmuch as he had been a nonresident of the State since July, 1921. Bill McDonald, Jr., answered, denying that he was indebted to the Shapleigh Hardware Company in any sum. The answer denied specifically that the conveyances were fraudulent, and alleged that the property conveyed therein was purchased in good faith and paid for. The McDonald Land Company and Bill McDonald, Jr., filed a cross-bill, setting up the same facts as alleged in their answer to the creditor's bill, and alleged that the judgments obtained in the justice court were null and void, that same were a cloud on their title, and prayed that same be set aside and held for naught.

On March 2, 1922, the East Arkansas Lumber Company filed its complaint in the chancery court of Greene County to foreclose a lien against Bob J. McDonald, in the sum of $3.286.87, for materials furnished him in the construction of the swimming-pool on the lots which had been conveyed by him to Bill McDonald, Jr. To this action service was waived, and the appearance of Bob McDonald entered as required by statute. These actions were all consolidated and tried together. The causes were submitted upon the pleadings as above outlined, the exhibits thereto, the interrogatories that were propounded to each of the defendants in the actions, and the

answers thereto, and the depositions that were submitted in the cause. The trial court found therefrom that Bob McDonald was indebted to the East Arkansas Lumber Company in the sum of $1,726.30, and declared a lien in its favor on the "swimming-pool" property as described in the deed. The court also found that the Shapleigh Hardware Company was entitled to a personal judgment against Bill McDonald, Jr., in the sum of $329.20, and that all the other creditors who had obtained judgments in the justice court as indicated were entitled to liens on the swimming-pool property described in the conveyance mentioned, to secure the payment of those judgments in the order of their priority, naming the several creditors and specifying the amounts of those judgments; and also found that Griffin Smith was entitled to an additional judgment in the sum of $136.31, which was a lien on lots 1 and 2, block 4, Pruitt's Addition to the city of Paragould—the swimming-pool lots.

The court further found that, at the time of the conveyances by Bob McDonald to the McDonald Land Company of lots 4 and 5, block 1, McDonald's Second Subdivision to the city of Paragould, Arkansas, known as the Bob J. McDonald homestead, these lands constituted the Bob J. McDonald homestead, and were therefore free from the claims of his judgment creditors, and dismissed their bill as to the McDonald Land Company, and rendered a decree in its favor on its cross-bill, canceling the judgments as a cloud on its title.

The court entered a decree dismissing Bill McDonald, Jr's., cross-bill praying a cancellation of the judgments mentioned as a cloud on his title. The court, in its decree, appointed a commissioner to sell the lots on which the swimming-pool was situated and to hold the proceeds subject to the decree in favor of the East Arkansas Lumber Company for material furnished, and the balance to the creditors in the order of their priority. The McDonald Land Company, Bill McDonald, Jr., and Bob J. McDonald appealed from so much of the decree of the court as is adverse to them, and the Shapleigh

Hardware Company and the other plaintiffs in the creditor's bill likewise appealed from the decree of the court canceling the judgments obtained by them against Bob J. McDonald and holding that the homestead of Bob McDonald, conveyed by Bob McDonald to the McDonald Land Company, could not be sold to pay these judgments.

1.   If Bob J. McDonald himself were seeking to have the judgments rendered against him in the justice court canceled as a cloud on his title to the "swimming-pool" and the homestead, he could not obtain such relief until he had alleged and proved a meritorious defense to those actions.   *State* v. *Hill,* 50 Ark. 458; *Robinson* v. *Arkansas Loan & Trust Co.,* 74 Ark. 292; *Broadway* v. *Sidway,* 84 Ark. 527; *Pettus* v. *Bird,* 136 Ark. 537.   This equitable doctrine applies to judgments rendered in a justice court as well as to judgments in courts of general jurisdiction. *Simpson-Webb Furn. Co.* v. *Moore,* 94 Ark. 347; *Brookfield* v. *Boynton Land & Lbr. Co.,* 127 Ark. 306.

The McDonald Land Company and Bill McDonald, Jr., derived their title to the lands in controversy through deeds from Bob J. McDonald.   They stand in his shoes, and have no greater rights to the lands in controversy than he had at the time he executed the deeds.   Section 6481, Crawford & Moses' Digest, provides that judgments of justices of the peace shall be a lien on the real estate of the defendant in the county, from the time of the filing of the transcript thereof, to the same extent as a judgment of the circuit court of the same county.   Therefore the judgments rendered by the justice court against Bob McDonald became a lien on his lands from the time of the filing of the transcripts thereof with the clerk of the circuit court of Greene County.   Transcripts of all the judgments rendered by the justice were filed with the clerk of the circuit court before the execution of the deeds mentioned, except the judgment of the Shapleigh Hardware Company.   Therefore it is unnecessary for us to determine whether or not service was duly obtained on Bob J. McDonald in the actions in which judgments were

rendered by the justice of the peace, because the McDonald Land Company and Bill McDonald, Jr., do not allege that Bob J. McDonald had any defense to those actions. The filing of the transcripts of those judgments was constructive notice to the world of the liens on the Bob McDonald lands. The McDonald Land Company and Bill McDonald, Jr., therefore had to take notice of the liens of those judgments, and were not innocent purchasers for value of the lands in controversy, so far as the lands purchased by them were affected by the lien of those judgments. All these judgment liens, except that of the Shapleigh Hardware Company, were valid and existing liens on the lands in controversy at the time the deeds mentioned were executed. The trial court therefore erred in vacating and canceling these judgments.

2.    The next question is whether or not the judgment of the Shapleigh Hardware Company takes precedence of the deeds from Bob J. McDonald to Bill McDonald, Jr., and to the McDonald Land Company. These deeds were signed and acknowledged by Mrs. Bob McDonald on January 28, 1922, and she took them with her to Havana, Cuba, where her husband executed the same on the 11th day of February, 1922, and on that day mailed the same to the respective grantees.

Bob J. McDonald sold to Bill McDonald, Jr., the "swimming-pool," and, as a consideration of the conveyance, Bill McDonald, Jr., agreed to pay, and did pay, Bob J. McDonald's debts, amounting in the aggregate to over $10,000, which was a fair value for the property. W. J. McDonald, who was president and owner of the McDonald Land Company, in consideration for the deed to the McDonald Land Company, paid and advanced money to Bob J. McDonald amounting to a great deal more than the value of the Bob J. McDonald homestead which was conveyed to the McDonald Land Company. These advances were made and the debts paid by W. J. McDonald in consideration that Bob McDonald would convey to W. J. McDonald his homestead, which he did.

It could serve no useful purpose to set out and discuss in detail the testimony with reference to these conveyances. Our conclusion is that they were not made with the intent to cheat, hinder and defraud creditors. The transcript of the judgment of the Shapleigh Hardware Company obtained in the justice court was filed in the office of the circuit clerk of Greene County, February 18, 1922. If the deeds mentioned were delivered and took effect before the filing of the transcript of the Shapleigh Hardware Company's judgment, then clearly the lands in controversy could not be subjected to the payment of that judgment, conceding that such judgment was valid.

In pursuance of the agreement between the grantor and the grantees that these deeds should be executed for the consideration as above mentioned, the deeds were signed by Mrs. Bob McDonald at Paragould, Arkansas, January 28, 1922, and taken by her to her husband, who was then at Havana, Cuba, where he signed and acknowledged the deeds, February 11, 1922, and on that day mailed the same to the respective grantees. These facts constitute in law a delivery to and acceptance of the deeds by the grantees on the 11th day of February, 1922.

In *Staggers* v. *White,* 121 Ark. 328, we held that the "acceptance of a deed on the part of the grantee, the same being for his benefit, will be presumed." See also *Graham* v. *Suddeth,* 97 Ark. 283. We are aware of the doctrine that the "presumption of delivery and acceptance of a deed beneficial to the grantee ought not to, and will not, obtain, where the right of a third party has intervened between the time when the grantor acted and the time of the actual acceptance by the grantee." *Fischer-Leaf Co.* v. *Whipple,* 51 Mo. App. 181-185. See also *Bell* v. *Farmers' Bank,* 11 Bush 34, 21 Am. Rep. 205-207. This doctrine seems to be supported by the weight of authority, though there are cases to the contrary. See note to *Monroe* v. *Bowles,* 54 L. R. A. 865-904.

But, under the facts of this record, it occurs to us that there was a delivery and actual acceptance of the deeds by the grantees on the same day they were signed, acknowledged and mailed to them, for the reason that, in pursuance of the agreement, these deeds were executed by Bob J. McDonald. And W. J. McDonald, before the deeds were signed by Bob J. McDonald, had already paid the debts of Bob McDonald in consideration for the deed, and Bill McDonald, Jr., had paid a large part of the debts he had assumed and agreed to pay. The deeds were executed by Mrs. Bob McDonald before she went to Cuba, and it was known certainly by the grantees that Bob McDonald would execute the same when the deeds reached him. We are convinced therefore that the deeds were delivered to and accepted by the grantees and operated to convey the title to them from Bob McDonald from the time he mailed the same at Havana, Cuba, to the grantees at Paragould, Arkansas. The grantees could not, under these circumstances, have repudiated the deeds, for they had, in legal effect, as we view the evidence, already accepted the same. Therefore it follows that the title of the McDonald Land Company and of Bill McDonald, Jr., to the lands in controversy is not affected by the lien of the judgment of the Shapleigh Hardware Company, and the court did not err in granting the McDonald Land Company and Bill McDonald, Jr., a cancellation of the judgment of the Shapleigh Hardware Company as a cloud upon their title.

3. It would unduly extend this opinion to set out and discuss in detail the testimony on the issue as to whether or not Bill McDonald, Jr., was personally liable to the Shapleigh Hardware Company for the goods purchased by Bob McDonald, consisting of electric fixtures for the swimming-pool amounting in the aggregate to $329.20, for which sum the court rendered judgment against Bill McDonald, Jr. This issue, under the evidence, was a mixed one of law and fact, and, after carefully considering the testimony, we have concluded that the court erred in finding Bill McDonald, Jr., personally

liable for this amount.  There is a clear preponderance of the evidence on this issue to the effect that these fixtures were purchased by Bob McDonald from one Bond, the agent of the Shapleigh Hardware Company, for his swimming-pool, and billed to the Grand Central Garage Company, which was owned by Bill McDonald, Jr.  But Bill McDonald, Jr., did not authorize their purchase, did not authorize the same to be billed to the Grand Central Garage, and did not accept and agree to pay for the same. There was no contract to bind him to pay for these goods, and, as gratuitous bailee of the same after they were shipped to his garage, there is nothing in the testimony to show that he was guilty of any gross neglect through which any loss resulted to the Shapleigh Hardware Company.  Bill McDonald, Jr., was not liable therefore as a gratuitous bailee.  *Strange* v. *Planters' Gin Co.,* 142 Ark. 100; *Baker* v. *Bailey,* 103 Ark. 12.  The court therefore erred in rendering judgment against Bill McDonald, Jr., in favor of the Shapleigh Hardware Company for the amount of this account.

4.  The only remaining question is on the cross-appeal of the Shapleigh Hardware Company from the decree dismissing its bill praying for a cancellation of the deed from Bob McDonald to the McDonald Land Company.  It follows, from what we have already said, that the court did not err in dismissing the Shapleigh Hardware Company's complaint in this respect, for the deed to the McDonald Land Company, as we have seen, was executed, delivered, and accepted before the Shapleigh Hardware Company's judgment became a lien on the lands conveyed by Bob J. McDonald to the McDonald Land Company.

The decree of the court canceling the justice judgments set up in the creditor's bill, except that of the Shapleigh Hardware Company, is reversed, and the cross-bill of the McDonald Land Company and Bill McDonald, Jr., asking for a cancellation of these judgments, is dismissed for want of equity.  The decree of the court rendering personal judgment against Bill McDonald, Jr., in

the sum of $329.20 in favor of the Shapleigh Hardware Company, is likewise reversed, and the bill of the hardware company as to this claim is dismissed for want of equity.   In all other respects the decree of the trial court is correct, and it is therefore affirmed.