Argued and submitted May 18, resubmitted in banc December 4,
affirmed December 17, 1979, reconsideration denied February 14,
petition for review denied March 13, 1980 (288 Or 701)

## STATE ex rel DEPARTMENT OF TRANSPORTATION,

*Respondent,*

*v.*

## LEE, et al

*Appellants,*

## THE OREGON BANK,

*Respondent,*

## (No. A-7707-09924, CA 12387)

603 P2d 1254

Argued and submitted May 18, 1979, Before Schwab, Chief Judge, Tanzer, Richardson, and Roberts, Judges, and Peterson, Judge Pro Tempore. Resubmitted in banc December 4, 1979, before Schwab, Chief Judge, Thornton, Lee, Tanzer, Richardson, Buttler, Joseph, Gillette, Roberts and Campbell, Judges, and Peterson, Judge Pro Tempore.

Richard A. Uffelman, Portland, argued the cause for appellants. With him on the brief were Paul R. Romain, and Martin, Robertson, Neill, Uffelman & Anderson, Portland.

Mary J. Deits, Assistant Attorney General, Salem, argued the cause for respondent State of Oregon. With her on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

No appearance for respondent The Oregon Bank.

RICHARDSON, J.

JOSEPH, J., dissenting opinion.

## RICHARDSON, J.

Defendants Lee appeal the judgment based on a jury verdict in a condemnation proceeding wherein the state sought to acquire defendants' property for construction of a highway. The property involved consisted of real property, including a restaurant.

The principal issue at trial was the compensation for taking of defendants' land and business. The particular difficulty encountered in this case resulted from the fact that the restaurant was partially destroyed by fire prior to the condemnation proceeding. In computing just compensation for the condemned property the jury is required to determine the fair market value of a functioning restaurant as it existed prior to the fire and deduct the estimated cost of restoring the restaurant to its original condition. The estimated cost of repairing the fire damage is critical to a proper determination of just compensation.

Three experts testified regarding valuation of the property and the estimated cost of repair. Defendants called one expert who calculated the net value to be $152,000 after deducting $31,000 to cure the fire damage. The state called two expert witnesses. The first estimated the net value to be $81,100 after deducting $28,000 for the fire damage. The second arrived at alternative evaluations utilizing different approaches. The lower net figure was $79,200 and the higher was $98,000. In both instances he deducted $28,238 as the estimated cost of repair.

In its case in chief, the state called defendant Robert Lee as a witness. He stated the fire occurred in December, 1976. Without objection, he testified that he had submitted a claim to his insurance carriers in the amount of $55,452 for the fire loss. He stated that the estimate was based on his own evaluation of the damage and the statement of a fire investigator. He acknowledged, in response to questions from the state's counsel, that he had stated in a sworn deposition that the estimated cost of repair was $55,452 and

that he had presented evidence as to that estimate during the arbitration hearing respecting his insurance claim. The questions were asked in the context of the witness's prior estimates of the fire damage repair costs. No objections were made to any of these questions.

On cross-examination defendants' counsel asked the witness how much he was awarded by the insurance company. The state's objection was sustained. In an offer of proof, the witness testified that there was an arbitration proceeding between him and various insurance companies resulting in an award of $25,000. After the offer of proof the jury was returned to the courtroom and the court stated to the jury:

"The objection is sustained. I will caution the jury that what some insurance company may have paid for a loss on the property has no bearing on any issue before you today. The only issue before you is what the value is of the property at the date of taking."

During summation to the jury the state argued the range of estimates of loss to be deducted was from $28,000 to $66,000.

Defendants argue that the evidence of their actual recovery should have been admitted because otherwise the jury was left to conclude that they would be overcompensated if less than their insurance claim were deducted from the market value of the property. In order to counter this possible misconception they assert that it was necessary to establish that they did not recover $55,452 for the fire damage.

The amount to be deducted from the fair market value of the property is the estimated cost of restoring the fire damaged building. The amount the insurance company paid in settlement of the fire damage claim is not admissible as direct evidence of the reasonable cost of repair. *See Adelphia Hotel Co. v. Providence Stock Co.,* 277 F 905, 26 ALR 213 (3rd Cir 1922); *Powell v. Crowell,* 63 Ga App 890, 11 SE 2d 918 (1940); *Burdick v. Valerius,* 172 Ill App 267 (1912). The amount an

insurance company may be required to pay is subject to numerous variables including the nature of the policy, the policy limits, the amount of any deductible figure, the specific hazard covered and the evidence of covered loss. Had evidence of the insurance recovery been admitted it would have opened the trial to an investigation of collateral issues respecting the basis of the insurance coverage and the factors surrounding payment of the claim.

Defendants do not contest the relevance or materiality of the testimony of Robert Lee respecting his previous estimate of the repair cost. The previous estimate was not consistent with the evidence, presented through expert opinion on behalf of defendants, that the estimated repair cost was $31,000. Evidence that defendants recovered $25,000 from the insurance companies neither explains nor contradicts Robert Lee's previously expressed estimate of repair cost. Regardless of the amount paid by the insurance carriers, the fact remains that Robert Lee at one time estimated the repair cost to be $55,452.

The cautionary instruction told the jury that an insurance recovery had no bearing on any issue in the case. This would tend to dispel any improper inferences the jury could draw from evidence that defendants had filed an insurance claim in the amount of $55,452. The court did not abuse its discretion in adopting this method to cure any arguable unfairness. There was no error in excluding the evidence.

In their second assignment defendants claim the court erred in recalling the jury for an additional instruction without reinstructing the jury entirely or cautioning the jury to attach no special significance to the additional instruction. The jury was instructed and retired for deliberation at 12:21 p.m. Counsel for the state then noted the court had omitted an instruction. The jury was recalled at 12:26 p.m. and the court gave the omitted instruction.

Defendants argue the process of giving a single instruction in isolation from the balance of the court's charge gave undue emphasis to this instruction. In view of the short time interval involved, approximately five minutes, it is unlikely the jury attached any special significance to the instruction.

Affirmed.

**JOSEPH, J.,** dissenting.

It is true that the weight of authority is to the effect that the amount paid by an insurer in settlement of a fire damage claim is not admissible as direct evidence of the reasonable cost of repairs. Be that as it may, that rule is not involved in this case. Here, the plaintiff wanted the fact that defendants had claimed a large amount of insurance money to be brought out prominently. Once the matter was raised, the amount of the insurance claim became very important.[1] Standing by itself without explanation, the fact and amount of the insurance claim could very well have caused the jury to give that evidence great weight.

To deny defendants the opportunity of showing that the actual insurance award was far less than the amount claimed was fundamentally unfair when the only issue in litigation was valuation. Furthermore, if the testimony of Mr. Lee in the state's case was admissible to show his estimate of the loss, it escapes me why he should not have been allowed to explain it or to

---

[1] Counsel for the state said in closing argument:

"Well, this is all very, very difficult, and the only reason I go through it with you now is show you how difficult it would be for you as a buyer. You are standing there in this burnt place and all you know is—well, you don't know for sure what it would cost to fix it back up to where somebody would come to it to buy more liquor or more Chinese food. I think all we do know is that it is uncertain and that you as a buyer would be most anxious about it before you would put your money down. You would know there is a range of twenty-eight thousand to sixty-six thousand dollars that would have to be subtracted from whatever you were going to be going to pay because that's what you are going to end up paying out of your own pocket to put it back in operating condition."

show how wrong that estimate was on cross-examination.

I dissent.

Judges Lee, Buttler, Roberts, and Peterson, J., *pro tem,* join in this dissent.